Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| CINDY PRIETO ADAMES | | *CERTIORARI* |
|---|---|---|
| Recurrida | | Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón (501) |
| v. | KLCE202400756 | |
| DEPARTAMENTO DE LA VIVIENDA DE PUERTO RICO P/C WILLIAM O. RODRÍGUEZ y otros | | Civil Núm.: BY2022CV02978 |
| Peticionario | | Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Comparece el Gobierno de Puerto Rico ("Gobierno") en representación del Departamento de la Vivienda de Puerto Rico ("Departamento de Vivienda") mediante una *Petición de Certiorari*. Nos solicita la revocación de una *Orden* emitida y notificada el 21 de mayo de 2024 por el Tribunal de Primera Instancia, Sala Superior de Bayamón ("foro primario" o "foro *a quo*"). Por virtud de la misma, el foro primario declaró *No Ha Lugar* la solicitud de paralización presentada por la parte peticionaria.

Por los fundamentos que expondremos a continuación, **expedimos** el auto de *certiorari* a los fines de **modificar** la *Orden* recurrida, y así modificada, **confirmamos**.

### I.

El 9 de junio del 2022, la señora Cindy Prieto Adames ("señora Prieto Adames") instó una *Demanda* en daños y perjuicios e incumplimiento contractual contra el Departamento de Vivienda, el

Número Identificador

SEN(RES)2024_____

Estado Libre Asociado de Puerto Rico y la señora Caroline Cruz Plumey ("señora Cruz Plumey"), entre otros.[1] En síntesis, alegó que es titular en pleno dominio de una propiedad inmueble cuya descripción registral es la siguiente:

> RÚSTICA: Parcela marcada con el número VEINTIUNO (21) en el plan de parcelación de la Comunidad Rural Sabana Seca el término municipal de Toa Baja, con una cabida superficial de DOSCIENTOS NOVENTA Y TRES PUNTO VEINTIOCHO (293.28) METROS CUADRADOS. En lindes por el NORTE, con calle Luz y parcela veintiuno "A" (21-A) de la comunidad; por el SUR, con las parcelas veintiuno "C" (21-C) y veintiuno "D" 921-D) de la comunidad; por el ESTE, con las parcelas veintiuno "A" (21-A) y veintiuno "C" (21-C) de la comunidad; y por el OESTE, con la calle Luz y la parcela veintiuno "D" (21-D) de la comunidad.

> Esta propiedad se encuentra inscrita como la Finca 25,117 al Folio 96 del Tomo 545, Sección II de Bayamón, Puerto Rico.[2]

Según expone la demandante, en el año 2008 solicitó al Departamento de Vivienda (1) la segregación de la porción del Solar 21-E colindante con la propiedad descrita, (2) la venta de la porción segregada, (3) y la respectiva agrupación a su Solar 21-T.P. Aseveró que la agencia accedió a tal petición. A su vez, expuso que el 18 de julio de 2008 un agrimensor licenciado certificó bajo su sello y firma un *Plano de Rediseño* de la Parcela 21-E. Indicó que surge de dicho *Plano* la descripción de la porción identificada como Solar 21-F:

> RÚSTICA: Parcela sita en la Calle Luz de la Comunidad Sabana Seca, Barrio Sabana Seca del Municipio de Toa Baja, Puerto Rico. Compuesta de un área superficial de 171.9687 metros cuadrados equivalentes a 0.0438 de cuerda de terreno. En lindes por el Norte con, la Calle Luz y Parcela 21-T.P.; por el Sur en parte con Parcela 21-E, Parcela 21-C y Parcela 21-D; por el Este, con Parcela 21—T.P. (propiedad de Cindy Prieto Adames) y por el Oeste con el Solar 21-E (propiedad de Caroline Cruz Plumey).[3]

En lo atinente, adujo que la agencia le requirió el pago de $250.00 para tasar el mencionado solar.[4] No obstante, señaló que el 21 de noviembre de 2013, el organismo administrativo y la señora

---

[1] *Apéndice de la parte peticionaria*, págs. 1-9.
[2] *Íd.*, pág. 2.
[3] *Íd.*, pág. 3.
[4] La señora Prieto Adames señala que con consentimiento y conocimiento del Departamento de Vivienda unió físicamente la Parcela 21-F y 21-E con la finalidad levantar una marquesina para proteger su vehículo de motor.

Cruz Plumey celebraron un contrato de usufructo sobre la Parcela 21-E condicionado a no alterar los puntos y líneas colindantes. Relató que, con posterioridad, entiéndase, el 12 de junio de 2015, el Departamento de Vivienda le vendió a la codemandada el Solar 21-E a cambio del precio cierto de $1.00. Sin embargo, especificó que por error administrativo se identificó el aludido solar con una expresión de cabida incorrecta y contraria al referido *Plano de Rediseño*. Por tal motivo, puntualizó que la agencia instruyó a la codemandada a no presentar la certificación administrativa ante el Registro de la Propiedad hasta que no se enmendara dicho documento. No obstante, señaló que esta actuó en contravención a tal directriz. Por lo anterior, solicitó (1) la cancelación de la inscripción ante el Registro de la Propiedad, (2) la corrección de cabida, (3) la valoración de la parcela 21-F y (4) la celebración de una compraventa a su favor. A su vez, peticionó el pago de $8,000.00 en concepto de costas y honorarios de abogado.

En respuesta, el 10 de noviembre de 2022, el Estado en representación del Departamento de Vivienda presentó su *Contestación a la Demanda*.[5] En esencia, argumentó que el *Plano de Rediseño de la Parcela* constituye un documento preliminar que nunca advino final y firme ante el proceso administrativo interno. Sostuvo que las partes no otorgaron un contrato por escrito, ni cumplieron con las formalidades para contratar con el ente gubernamental a tenor con la Ley de Contabilidad del Gobierno. Además, negó la existencia de los daños alegados bajo el fundamento de falta de especificidad. En vista de lo anterior, manifestó que la *Demanda* no presenta una causa de acción que motive la concesión de algún remedio.

---

[5] *Íd.*, págs. 53-60.

Tras una serie de trámites procesales, el 20 de febrero de 2024, el Estado presentó una *Moción de Desestimación al Amparo de la Regla 10.2*.[6] Entre otros extremos, arguyó que la parte demandante incumplió con la debida notificación conforme al procedimiento recogido en la Ley de Pelitos contra el Estado.[7] Asimismo, **adelantó que no renunciaba a invocar algún señalamiento jurisdiccional a tenor con la ley denominada *Puerto Rico Oversight, Management, Economic Stability Act*** ("PROMESA") (Énfasis nuestro).[8]

Por su parte, el 14 de marzo de 2020, la señora Prieto Adames sometió una *Moción en Oposición a Moción de Desestimación al Amparo de la Regla 10.2*.[9] En esta, adujo que la agencia codemandada levantó la defensa de falta de notificación a destiempo, es decir, luego de dos (2) años de instada la *Demanda*. Por tanto, alegó que tal demora implicó una renuncia a tal argumento afirmativo. Examinadas ambas posturas, 18 de marzo de 2024, el foro *a quo* emitió una *Orden*, notificada al día siguiente, en la cual denegó la referida solicitud desestimatoria.[10]

Oportunamente, el 3 de abril de 2024, el Gobierno sometió una *Moción Solicitando Reconsideración de Resolución*.[11] En esta, reiteró que el pleito instado configura una reclamación en daños, por lo que, le resulta mandatorio el cumplimiento específico de notificación de acuerdo con la Ley de Pleitos contra el Estado. Ese mismo día, el tribunal recurrido decretó una *Orden*, notificada el 4 de abril de 2024, en la cual dictaminó *No Ha Lugar* la petición de reconsideración.[12]

---

[6] *Íd.*, págs. 71-74.
[7] Ley de Pleitos contra el Estado, Ley Núm. 104 de 29 de junio de 1955, 32 LPRA 3077.
[8] *Puerto Rico Oversight, Management and Economic Stability Act* (*PROMESA*), Ley Pública 114-187, 48 USC sec. 2162.
[9] *Íd.*, págs. 76-79.
[10] *Íd.*, pág. 80.
[11] *Íd.*, págs. 81-90.
[12] *Íd.*, pág. 91.

No obstante, el 24 de abril de 2024, el organismo gubernamental presentó una *Moción en Solicitud de Orden*.[13] En su escrito, peticionó que la demandante (1) informara si presentó o no un documento denominado *proof of claim* ante el Título III del *Plan of Adjustment of Commonwealth of Puerto Rico* y (2) que proveyera una copia de dicha documentación. Argumentó que de no haber sometido el *proof of claim*, entonces procedía la desestimación con perjuicio de la *Demanda*. En cambio, puntualizó que si radicó tal documento, correspondía la liquidación del reclamo ante el trámite prescrito en el Título III de PROMESA.

En respuesta al argumento jurisdiccional, el 17 de mayo de 2024, la señora Prieto Adames presentó una *Moción en Oposición a Paralización del Caso y en Cumplimiento de Orden*.[14] En este escrito, relató que en el año 2021 un funcionario del Departamento Vivienda le solicitó una consulta legal para corregir el error administrativo en torno a la segregación. En esa dirección, sostuvo que la paralización automática no le aplica a su reclamación, pues desde el referido año conserva la expectativa de que el Gobierno atienda su problema. Precisó, además, que la Sección 405 del Título IV de PROMESA provee el mecanismo de paralización automática solo para los litigios pendientes o que se pudieron instar antes de la solicitud de quiebra. Sin embargo, puntualizó que su *Demanda* surgió después de ese proceso. Por tanto, razonó que no debía presentar un *proof of claim*. Examinados ambos argumentos, el 21 de mayo de 2024, el tribunal de instancia emitió y notificó una *Orden*, que declaró *No Ha Lugar* la paralización solicitada.[15]

En desacuerdo, el 5 de junio de 2024, el Gobierno presentó una *Moción de Reconsideración*.[16] Ese mismo día, el foro *a quo* dictó

---

[13] *Íd.*, págs. 92-98.
[14] *Íd.*, págs. 198-201.
[15] *Íd.,* pág. 206.
[16] *Íd.,* págs. 207-213.

una *Orden,* notificada el 6 de junio de 2024, en la cual declaró *No Ha Lugar* la referida solicitud.

Inconforme, el 8 de julio de 2024, el Gobierno acudió ante nos mediante una *Petición de Certiorari.* En su recurso, presentó los siguientes señalamientos de error:

> El Tribunal de Primera Instancia erró al permitir la continuación de los procedimientos, a pesar de que, según las disposiciones del Plan de Ajuste y la Orden de Confirmación, no tiene jurisdicción para ello.
>
> El Tribunal de Primera Instancia erró al no ordenar a la parte demandante-recurrida a evidenciar si presentó un *proof of claim* ante la Corte de Título III —lo que tendría el efecto de mantener paralizado el presente caso— o, si, por el contrario, procede desestimar el pleito con perjuicio.

El 18 de julio de 2024, esta Curia emitió *Resolución* concediendo a la parte recurrida un término de diez (10) para mostrar causa por la cual no expedir el auto de *certiorari* y revocar la determinación impugnada.

Eventualmente, el 15 de agosto de 2024, este Tribunal de Apelaciones emitió *Resolución* al amparo de la Regla 83.1 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 83.1, a los fines de que el Tribunal de Primera Instancia aclarara y fundamentara la *Orden* emitida y notificada el 21 de mayo de 2024. En cumplimiento con lo anterior, el 16 de agosto de 2024, el foro primario decretó y notificó una *Orden* con el siguiente pronunciamiento judicial:

> A tenor con la Resolución emitida el 15 de agosto de 2024 por el Tribunal Apelativo a los efectos que; "...se aclare y fundamente su orden emitida y notificada el 21 de mayo de 2024, en torno a su determinación de que 'no ha lugar a la Solicitud de Paralización presentada por el ELA". **Este tribunal entiende no procede la paralización solicitada por el ELA por tratarse de una reclamación por error administrativo sobre error de cabida donde se solicita la reversión de título para completar el proceso de inscripción en el Registro de la Propiedad. Cualquier reclamación en daños instada puede ser desestimada o desistida en pro de la justicia y para que la parte demandante muestre, si en efecto, el Dpto. de la Vivienda cometió algún error en la segregación y agrupación de la franja del solar 21-E con la marquesina del Solar 21-TP**. (Énfasis nuestro).

Transcurrido el término para que la demandante-recurrida presentara su oposición, prescindimos de dicho escrito con el fin de

ofrecer un despacho justo y eficiente de la controversia ante nos de conformidad con la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7(B)(5). Consecuentemente, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

## II.
## A. Recurso de *certiorari*

El auto de *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una determinación de un tribunal inferior. *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021). Véase, también, el Artículo 670 del Código de Enjuiciamiento Civil de 1933 de la Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva de este recurso "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Rivera Gómez v. Arcos Dorados Puerto Rico*, 212 DPR 194, 209 (2023); *IG Builders et al.* v. *BBVAPR*, 185 DPR 307, 338 (2012).

Ahora bien, el ejercicio de esta discreción no es absoluto. La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias que activan nuestras facultades revisoras ante aquellas resoluciones u órdenes interlocutorias:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público **o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia**. Al denegar la expedición de un recurso de

certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis nuestro).

La enunciada regla "reconoce que ciertas determinaciones interlocutorias pueden afectar sustancialmente el resultado del pleito o tener efectos limitativos para la defensa o reclamación de una parte o conllevar cuestiones neurálgicas o de política pública que deben estar sujetos a revisión de forma inmediata". *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 847-848 (2023), citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6.ª ed., San Juan, Ed. LexisNexis, 2017, Sec. 5515a, pág. 533. Sin embargo, aun cuando al amparo de dicha regla ostentamos la jurisdicción sobre ciertas determinaciones interlocutorias, "la expedición del auto y la adjudicación en sus méritos es discrecional". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008).

Cónsono con lo anterior, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, preceptúa los criterios para la expedición de un auto de *certiorari*:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

**(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.**

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

**(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.**

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) **Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.** (Énfasis nuestro).

Estas consideraciones orientan la función del foro apelativo para ejercer sabiamente su facultad discrecional. *Rivera Gómez v. Arcos Dorados Puerto Rico, supra,* pág. 209. A su vez, la regla mencionada permite que el análisis revisorio no se efectúe en el vacío ni se aparte

de otros parámetros al momento de considerar los asuntos planteados. *Rivera Gómez v. Arcos Dorados Puerto Rico, supra.*, pág. 209; *800 Ponce de León v. American International*, 205 DPR 163, 176 (2020).

A la luz de tales preceptos, los tribunales revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto". *Citibank v. ACBI*, 200 DPR 724, 736 (2018). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). En este ejercicio revisorio, nos corresponde ser cuidadosos y conscientes de la naturaleza de la controversia ante nuestra consideración. *Torres González v. Zaragoza Meléndez, supra.*

### B. Jurisdicción en la esfera judicial

Como es sabido, la jurisdicción es el poder o la autoridad que posee un tribunal para considerar y decidir casos o controversias con efecto vinculante para las partes. *MCS Advantage, Inc. v. Fossas Blanco*, 211 DPR 135, 144 (2023). *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021). Por su transcendencia, "el primer factor a considerar en toda situación jurídica que se presente ante un foro adjudicativo es el aspecto jurisdiccional". *R&B Power, Inc. v. Junta de Subastas*, 2024 TSPR 24, 214 DPR __ (2024); *Torres Alvarado v. Maderas Atiles*, 202 DPR 495, 500 (2019).

Los tribunales deben ser celosos guardianes de su propia jurisdicción. *Fideicomiso de Conservación de Puerto Rico v. Estado Libre Asociado de Puerto Rico*, 211 DPR 521, 530 (2023). Por tanto, las cuestiones relativas a la jurisdicción son privilegiadas y deben atenderse y resolverse con preferencia a cualesquiera otras. *S.L.G. Szendrey Ramos v. F. Castillo*, 169 DPR 873, 882 (2007). En consonancia con lo anterior, los entes adjudicativos no poseen discreción para asumir la jurisdicción en aquellas circunstancias en

que no la tienen. *Rivera Marcucci v. Suiza Dairy*, 196 DPR 157, 165 (2016). La falta de tal autoridad "no es susceptible de ser subsanada". *S.L.G. Szendrey Ramos v. F. Castillo*, *supra*, pág. 883. Si un tribunal carece de jurisdicción, solo resta así declararlo y desestimar la reclamación sin entrar en los méritos de la controversia. *R&B Power, Inc. v. Junta de Subastas*, *supra*; *Mun. de San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014).

### C. Manejo de caso ante el Tribunal de Primera Instancia

La Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R. 1, procura un ordenamiento procesal que garantice el acceso a los tribunales y el adecuado manejo del proceso. Lo anterior favorece "una solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R. 1. Para alcanzar tales propósitos, los jueces de instancia gozan de "flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales". *In re Collazo I*, 159 DPR 141, 150 (2003). Es decir, ostentan la autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar correctivos apropiados en la forma y manera que su buen juicio les indique. *Íd.*

En consonancia a tales principios, el tribunal de instancia tiene el deber ineludible de garantizar que los procedimientos se ventilen sin demora, con miras a que se logre una justicia rápida y eficiente. *In re Pagani Padró*, 181 DPR 517, 529 (2011). Por tal razón, los foros revisores apelativos no debemos intervenir con las determinaciones emitidas por el foro primario ni sustituir el criterio utilizado producto de la discreción judicial, salvo que se pruebe que dicho foro primario actuó con prejuicio o parcialidad, incurrió en craso abuso de discreción, o que incurrió en error manifiesto. *Citibank et al. v. ACBI et al.*, *supra,* pág. 736.

### D. *Paralización de reclamaciones monetarias al amparo de PROMESA*

La Sección 3 del Artículo IV de la Constitución de Estados Unidos de América le concede al Congreso la autoridad para adoptar leyes respecto a los territorios bajo su jurisdicción. Art. IV, Sección 3, Const. EE. UU., LPRA, Tomo 1. En virtud de tal facultad, el 30 de junio de 2016, el Congreso aprobó *Puerto Rico Oversight, Management and Economic Stability Act* ("PROMESA"), Ley Pública 114-187, 48 USC sec. 2162. Esta pieza legislativa establece la Junta de Supervisión y Administración Financiera ("Junta") investida de una serie de poderes y responsabilidades vinculados con el manejo fiscal y presupuestario del Gobierno de Puerto Rico.

A los fines de cumplir su propósito, la precitada ley federal provee "un proceso de ajuste de deuda particular para Puerto Rico bajo el cual la Junta de Supervisión puede iniciar un trámite legal de quiebras". R. Emanuelli Jiménez, Y. Colón Colón, *PROMESA*: *Oversight, Management and Economic Stability Act,* 1ra ed., San Juan, Ediciones SITUM, 2016, pág. 48. En lo pertinente, la Sección 301 (a) del Título III de PROMESA incorpora las Secciones 362 y 922 del Código Federal de Quiebras respecto a las paralizaciones automáticas de pleitos en contra del deudor y su propiedad. *Lacourt Martínez, et al v. Jta. Lib. et al,* 198 DPR 786, 787 (2017). El objetivo de este procedimiento es liberar al deudor de presiones financieras mientras se dilucida el procedimiento de quiebra. *Íd.,* pág. 788, citando a *Collier on Bankruptcy* Sec. 362.03 esc. 6.

El mecanismo de paralización impide "entre otras cosas, el comienzo o la continuación de cualquier proceso judicial, administrativo o de otra índole que fue o pudo haber sido interpuesto en contra del deudor, o para ejercitar cualquier acción cuyo derecho nació antes de que se iniciara la quiebra". *Peerless Oil v. Hnos. Torres Pérez,* 186 DPR 239, 255 (2012). Ahora bien, la

petición de quiebra solo paraliza los procedimientos contra el deudor que la solicitó. *Íd.*, pág. 243. De tal manera, la responsabilidad de una persona que es codeudor, fiador o en alguna forma garantizador de un quebrado no se altera por la adjudicación en quiebra de éste. *Íd.* pág. 256, citando a *Cámara Insular Etc. v. Anadón,* 83 DPR 374, 380 (1961).

No obstante, el Tribunal Supremo de Puerto Rico ha sido cauteloso en favorecer un análisis mecanicista para decretar la paralización de reclamaciones contra el Estado. A modo ilustrativo, en *Requena Mercado v. Policía de Puerto Rico,* 205 DPR 285 (2020), resolvió que la impugnación de una preguntas de ascenso no constituye una reclamación monetaria sujeta a la paralización automática del Título III de PROMESA. En su razonamiento jurídico concluyó que "**al examinar las particularidades del caso a la luz del derecho aplicable, resulta forzoso concluir que el remedio solicitado por los peticionarios no radica en una reclamación monetaria. En consecuencia, este caso no está paralizado**". *Íd.*, págs. 298-299. (Énfasis nuestro). Al respecto, emitió el siguiente pronunciamiento:

> [**E**]**l resultado positivo de la impugnación del examen escrito apenas constituye el primer escalón que los peticionarios deben alcanzar para seguir compitiendo en las demás partes del proceso de evaluación para el ascenso al rango de capitán. Resulta claro que, en la fase en controversia, no hay aspectos monetarios en controversia. Por consiguiente, no podemos estar de acuerdo con el razonamiento del foro administrativo. Por el contrario, los foros recurridos debieron evaluar con más cautela las particularidades del caso y, así, cumplir a cabalidad su deber de interpretar si un pleito está o no paralizado según el Título III de la Ley PROMESA.** *Íd.*, pág. 298. (Énfasis nuestro).

De manera similar, en *Lacourt Martinez v. JLBP, supra,* determinó que procedía la continuidad de una serie de casos relacionados con (1) la Junta de Libertad bajo Palabra; (2) la clasificación de custodia; (3) la solicitud de terapias; (4) la evaluación de plan institucional; (5) la impugnación de sanciones; (6) la

adjudicación de bonificaciones, y (7) la retención de pertenencias incautadas durante un cateo. En este dictamen, razonó que dichos casos no involucran reclamación monetaria alguna contra el Estado. *Íd.*, pág. 789. Asimismo, en *Lab. Clínico v. Depto. Salud*, 198 DPR 790 (2017), avaló la continuidad de un pleito que giraba en torno a la relocalización de un laboratorio clínico y un permiso para construir una torre de telecomunicaciones. En la determinación, exhortó a proceder con mayor cautela en el contexto de la quiebra gubernamental y la paralización de pleitos de conformidad con PROMESA. *Íd.,* págs. 792-793.

Ante aquellas reclamaciones con similares elementos, "nuestros tribunales locales poseen jurisdicción concurrente para evaluar si un caso está efectivamente paralizado o si está sujeto a las excepciones de la paralización, en virtud del Título III de la Ley PROMESA". *Requena Mercado v. Policía de Puerto Rico, supra*, pág. 291. Véanse, también, *Lab. Clínico et al. v. Depto. Salud et al., supra*, pág. 792; *Lacourt Martínez et al. v. JLBP et al., supra*, pág. 788. Lo anterior implica que los foros adjudicativos tienen el deber ministerial de cerciorarse que cuentan con la autoridad para decretar la continuidad o la paralización del caso.

### E. *Petición de Quiebra y Orden de Confirmación del Plan de Ajuste de Deudas*

De conformidad con la Sección 301 (a) del Título III de PROMESA, el 3 de mayo de 2017, la Junta presentó una petición de quiebra ante el Tribunal de Distrito Federal de Puerto Rico. La radicación de este proceso implicó "**la paralización automática de los pleitos que generalmente reclaman, como parte de los remedios, una compensación monetaria. Particularmente, los pleitos presentados —o que pudieron presentarse— contra el Gobierno de Puerto Rico antes de que se iniciara la quiebra**". *Requena Mercado v. Policía de Puerto supra,* pág. 291. (Énfasis nuestro).

Acogida la petición de quiebra, el 18 de enero de 2022, el Tribunal de Distrito Federal de Puerto Rico emitió el *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* ("*Confirmation Order*" u "*Orden de Confirmación*").

Esta determinación confirmó el *Modified Eighth Amended Title III Joint Plan Of Adjustment Of The Commonwealth Of Puerto Rico*, mejor conocido, como el *Plan de Ajuste de la Deuda* ("*Plan de Ajuste*"), y consecuentemente, se determinó que el **15 de marzo de 2022** sería su fecha de efectividad ("*effective date*"). Ello produjo una serie de consecuencias jurídicas en torno al proceso de quiebra gubernamental y los reclamos monetarios. En lo pertinente, el inciso cincuenta y nueve (59) decreta un *injunction* permanente sobre aquellas reclamaciones presentadas bajo las siguientes circunstancias:

> **59. <u>Injunction on Claims</u>.** Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable**, all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim** or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff,

subrogation, or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability discharged pursuant to the Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property. Notwithstanding the foregoing, without prejudice to the exculpation rights set forth in section 92.7 of the Plan and decretal paragraph 61 hereof, nothing contained in the Plan or this Confirmation Order is intended, nor shall it be construed, to be a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors. (Énfasis suplido).

El precitado inciso sustituye el efecto de paralización automática de casos ocasionada por la aprobación y vigencia de la Sección 301 del Título III de PROMESA.

En consecuencia, la Sección 92.2 del *Plan de Ajuste* instaura un trámite para gestionar la paralización de reclamos monetarios contra el Gobierno. Para ello, establece el mecanismo de descarga y relevo de acciones en atención a la quiebra. El aludido inciso lee de la siguiente manera:

**92.2 <u>Discharge and Release of Claims and Causes of Action</u>**:

a) Except as expressly provided in the Plan or the Confirmation Order, **all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action; provided, however**, that, without prejudice to the exculpation rights set forth in Section 92.7 hereof, nothing contained in the Plan or the Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors. **Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date**), and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan. For the

avoidance of doubt, nothing contained herein or in the Confirmation Order shall release, discharge or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims or causes of action against any non- Debtor Entity. Claims and causes of action against PREPA arising from or related to PREPA issued bonds, and releases against PREPA and its assets shall be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein. (Énfasis Suplido)

(b) Except as expressly provided in the Plan or the Confirmation Order, all Entities shall be precluded from asserting any and all Claims against the Debtors and Reorganized Debtors, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets and property, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities. **In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtors and the Reorganized Debtors pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtors or Reorganized Debtors and their respective.** (Énfasis nuestro).

En aras de cumplir con este trámite, el reclamante del Gobierno debía someter una solicitud de gastos administrativos dentro del término de (90) días a partir de la efectividad del *Plan de Ajuste de Deuda*. De no haber efectuado esta exigencia, queda vedado permanentemente de instar su reclamación de pago contra el Gobierno. La fecha límite para presentar tal documentación correspondía al 13 de junio de 2022. Al respecto, el inciso (44) dispone lo siguiente:

44. **Administrative Claim Bar Date**.
The last day to file proof of Administrative Expense Claims shall be ninety (90) days after the Effective Date, after which date, any Administrative Expense Claim, proof of which has not been filed, shall be deemed forever barred, and the Debtors and Reorganized Debtors shall have no obligation with respect thereto; provided, however, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim (a) shall have been incurred (i) in accordance with an order of the Court or (ii) with the written consent of the applicable Government

Parties expressly granting such Administrative Expense Claim, (b) is a Professional Claim, (c) is an intergovernmental Claim, (d) is an Administrative Expense Claim of the IRS for the payment of taxes incurred by any of the Debtors during the period from and after the Commonwealth Petition Date, the ERS Petition Date, or the PBA Petition Date, as applicable, (e) relates to actions occurring in the ordinary course during the period from and after the respective Debtor's petition date up to and including the Effective Date, (f) relates to a Claim that is subject to the provisions of the ACR Order, including, without limitation, "grievance claims" relating to any of the Debtor's collective bargaining agreements, or (g) is the subject of a pending motion seeking allowance of an administrative expense pursuant to section 503(b) of the Bankruptcy Code as of the entry of this Confirmation Order; and, provided, further, that any such proof of Administrative Expense Claim by a governmental unit shall remain subject to the rights and interests of the Debtors and Reorganized Debtors, as the case may be, and any other party in interest to interpose an objection or other defense to the allowance or payment thereof.

Cónsono con lo anterior, la Sección 1.52 de la *Orden de Confirmación* provee una definición para gastos administrativos:

**1.52 Administrative Expense Claim**: A Claim against the Debtors or their Assets constituting a cost or expense of administration of the Title III Cases asserted or authorized to be asserted, on or prior to the Administrative Claim Bar Date, in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code arising during the period up to and including the Effective Date, and otherwise complying with applicable Puerto Rico law, including, without limitation, subject to the occurrence of the Effective Date, and except as provided in Section 3.5 hereof, Consummation Costs and PSA Restriction Fees; provided, however, that, under no circumstances shall an Administrative Expense Claim include the PBA Administrative Expense Claim.

### F. *Orden de extensión de fecha para someter la solicitud de gastos administrativos*

El 20 de octubre de 2022, el Tribunal de Distrito Federal de Puerto Rico dictaminó el *Order Extending Administrative Claim Bar Date for Certain Parties and Modifying Discharge Injunction ("Orden de Extensión")*. Así extendió la fecha límite para presentar la solicitud de gastos administrativos hasta el **18 de enero de 2023**. Esta nueva fecha solo aplica a aquellas reclamaciones **post petición** de quiebra cuya parte reclamante no hubieran sido debidamente notificada:

**2. The Administrative Claim Bar Date pursuant to decretal paragraph 44 of the Confirmation Order and section 1.51 of the Plan shall be extended to 4:00 p.m. (Atlantic Standard Time) on January 18, 2023 (the**

**"Extended Administrative Claim Bar Date"), solely with respect to any claim or cause of action**:

(A)(1) asserted in a litigation or action against the Commonwealth, PBA, or ERS commenced from and after the respective petition date and prior to the Effective Date and relating to an action or event occurring from and after the respective petition date and prior to the Effective Date, or (2) not subject to a pending litigation or action, but arising from actions or events occurring from or after the respective petition date and prior to the Effective Date, and

(B) the holder of such claim did not receive service of the Effective Date Notice as documented in a Certificate of Service referred to in paragraph 3 below.

No obstante, surge del párrafo (5) de la precitada *Orden* que el requisito de acreditar gastos administrativos no aplica a ciertos casos surgidos a partir de la radicación de solicitud de quiebra o previo a la fecha de efectividad:

5. The requirement to file a proof of Administrative Expense Claim pursuant to decretal paragraph 44 of the Confirmation Order shall not apply to any of the following claims or causes of action arising from and after the applicable petition date with respect to the Commonwealth, ERS, and PBA and prior to the Effective Date: (i) Eminent Domain/Inverse Condemnation Claims, (ii) claims for property seized by the Debtors pursuant to the Uniform Forfeiture Act of 2021, 34 L.P.R.A. 1724 et seq., (iii) claims for attorneys' fees and costs pursuant to the Individuals with Disabilities Education Improvement Act, 20 U.S.C. 1400 et seq., (iv) tax refund claims, and (v) claims authorized to be asserted pursuant to 32 L.P.R.A. § 3077(a), to the extent the amount of such claim asserted is within such statutory limitation of $75,000 or $150,000, as applicable.

Respectivamente, el párrafo seis (6) de la *Orden* modifica el *injunction* permanente de la Sección 92.3 del *Confirmation Order* para autorizar la litigación de aquellos casos bajo la Ley de Pleitos contra el Estado, Ley Núm. 104 de 29 de junio de 1955, 32 LPRA 3077, según enmendada, **siempre y cuando no exceda de los límites monetarios**:

6. The injunctions contained in section 92.3 of the Plan and decretal paragraph 59 of the Confirmation Order are modified solely to the limited extent of allowing litigation with respect to claims authorized to be asserted pursuant to 32 L.P.R.A. § 3077(a), to the extent the amount of such claim asserted is within such statutory limitation of $75,000 or $150,000, as applicable, to proceed to final judgment and execution, including any appeals.

**III.**

En el recurso de epígrafe, el Gobierno en representación del Departamento de Vivienda señala que incidió el Tribunal de Primera Instancia al permitir la continuidad de los procedimientos judiciales. En torno a este proceder, sostiene que el tribunal carece de jurisdicción por razón del interdicto permanente contemplado en la Sección 301(a) del Título III de PROMESA. Por lo que, considera que erró al no ordenar a la señora Prieto Adames a acreditar la presentación del *proof of claim* ante el foro federal. Argumenta que si esta evidencia su presentación, el foro *a quo* tendría la obligación de paralizar los procedimientos hasta que el Tribunal de Distrito Federal de Puerto Rico dicte lo contrario. Contiende, además, que de no haber presentado el referido documento, procede desestimar con perjuicio la *Demanda.* Por último, previene que si el reclamo continúa incurriría en una serie de gastos y trabajos innecesarios producto de una actuación carente de jurisdicción.

Luego de examinar sosegadamente el expediente ante nuestra consideración, determinamos que procede la expedición del auto de *certiorari.* Nos encontramos ante una *Orden* interlocutoria resultante de múltiples señalamientos sobre ausencia de jurisdicción. Por tanto, no acoger este recurso pudiese conllevar una situación irremediable derivada de un argumento jurisdiccional ineludible, el cual sería oneroso en un curso apelativo posterior. Véase la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. A su vez, la etapa del caso es propicia para generar su solución a la luz de un análisis detenido según nos facultan los parámetros orientativos de la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII- B, R. 40. Examinada nuestra jurisdicción, nos encontramos en posición de resolver.

Surge del expediente ante nuestra consideración que el Gobierno presentó una solicitud ante el foro *a quo* con el propósito

de que la señora Prieto Adames (1) informara si presentó o no el *proof of claim* ante el Títiulo III del *Plan de Ajuste* y (2) proveyera la copia de este documento. Esta petición es cónsona al derecho vigente, pues responde al trámite aplicable al proceso de quiebra reseñado. Sin embargo, el tribunal denegó tal solicitud y continuó el caso sin examinar el alcance de su jurisdicción. **Debido a las circunstancias particulares de este caso, razonamos que incidió en tal proceder**.

En la revisión del caso ante nos, contemplamos que la *Demanda* contra el Departamento de Vivienda surge en el trámite de **post petición** de quiebra. Ante este contexto, los tribunales locales poseen jurisdicción concurrente para evaluar si el caso está efectivamente paralizado o si está sujeto a las excepciones de la paralización contempladas en el Título III de la Ley PROMESA. Véanse, *Requena Mercado v. Policía de Puerto Rico, supra; Lacourt Martinez v. JLBP, supra; Lab. Clínico v. Depto. Salud, supra.*

Como abordamos previamente, la evaluación jurisdiccional requiere determinar, en primer lugar, si la reclamación versa sobre un asunto monetario contra el Gobierno. De responder en la afirmativa, procede adoptar un análisis a tenor con la *Orden de Confirmación* y *Orden de Extensión* según instruyó el Tribunal de Distrito Federal de Puerto Rico. En tal circunstancia, es menester evaluar si la parte demandante presentó o no el *proof of claim*. En su defecto, es necesario considerar si es un pleito exento de tal requisito tal como disponen los párrafos (5) y (6) del *Order Extending*. De no aplicar las excepciones, entonces corresponde ordenar la desestimación de la causa de acción. Veamos.

Cónsono con lo discutido, **resolvemos que la causa de acción sobre el aparente error administrativo, el cual produjo una inscripción de cabida incorrecta, no es una reclamación monetaria**. Por tanto, no resulta mandatorio requerir la

acreditación del *proof of claim* sobre este reclamo, pues no está paralizado por el interdicto permanente. Arribamos a esta conclusión teniendo en consideración la *Orden* emitida el 16 de agosto de 2024 por el Tribunal de Primera Instancia en cumplimiento de una *Resolución* dictada por esta Curia a tenor con la Regla 83.1 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 83.1. En su determinación judicial, el tribunal explicó el razonamiento que motivó la continuidad del pleito:

> Este tribunal entiende que no procede la paralización solicitada por el ELA por tratarse de una reclamación por error administrativo sobre error de cabida donde se solicita la reversión de título para completar el proceso de inscripción en el Registro de la Propiedad.

Respecto a esta causa de acción**,** resolvemos que el foro primario actuó conforme derecho al declarar *No Ha Lugar* la solicitud de paralización.

Sin embargo, **especificamos que el tribunal erró al continuar automáticamente la causa de acción sobre daños y perjuicios por alegado incumplimiento contractual. Esta es una reclamación monetaria.** Por tanto, como parte del adecuado manejo del caso, le corresponde evaluar de manera cautelosa su jurisdicción. Por consiguiente, disponemos que con relación a esta causa de acción **debe ordenar la celebración de vista para examinar si la demandante presentó o no *el proof of claim*, o en su defecto, auscultar si el pleito está sujeto a las excepciones de la paralización de acuerdo con el Título III de PROMESA y las respectivas órdenes dictadas por el Tribunal de Distrito Federal.** Por último, puntualizamos que si bien es cierto que nuestro ordenamiento procesal no favorece la desestimación o la paralización automática de los casos, ello no es óbice para que los tribunales incumplan con el ejercicio ministerial de examinar cautelosamente el alcance de su jurisdicción. Recordemos, pues, que la falta de tal autoridad "no es susceptible de ser subsanada".

*S.L.G. Szendrey Ramos v. F. Castillo*, *supra*, pág. 883. Por tanto, exhortamos al foro primario a que en este caso realice el examen pertinente de jurisdicción para garantizar una solución justa, rápida y económica según exige la Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R. 1

**IV.**

Por los fundamentos que anteceden, **expedimos** el auto de *certiorari*, y consecuentemente, **modificamos** la *Orden* recurrida con el fin de decretar la continuidad del pleito sobre el alegado error en la certificación administrativa, el cual produjo una inscripción de cabida incorrecta. En cuanto al reclamo en daños y perjuicios, disponemos que el tribunal celebre una vista para examinar cautelosamente el alcance de su jurisdicción. A tales efectos, le corresponde constatar si la demandante presentó o no el *proof of claim*, o en su defecto, debe evaluar si el pleito está sujeto a las excepciones de la paralización en virtud del Título III de PROMESA y las órdenes reseñadas en este dictamen.

Así modificada, **confirmamos** la *Orden* en cuestión, y devolvemos el caso al Tribunal de Primera Instancia para la continuidad de los procedimientos judiciales de manera compatible con esta *Sentencia*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones